IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER M. INTROCASO, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 07-3726 |
| | : | |
| PATRICK L. MEEHAN, et al., | : | |
|     Defendants | : | |

M E M O R A N D U M

**STENGEL, J.**                                                                                   July 9, 2008

In a rambling sixty-six page complaint, Alexander M. Introcaso, who is represented by counsel, brings this civil action against various federal,[1] state, and local law enforcement officials, alleging constitutional and common law tort claims targeting his prosecution and conviction for violating the National Firearms Act.[2] He rehashes many claims already rejected by the District Court, the Third Circuit Court of Appeals,

---

[1] I assume that Introcaso has brought a Bivens action against the federal defendants. See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) (stating cause of action against federal officials). A Bivens action, which is the federal equivalent of the Section 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under the color of federal law. Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001); see also Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004). Here, the claims alleged against the federal defendants arise from their acts taken or omitted as officers of the United States, or as persons acting under the direction of one or more officers of the United States, during the investigation and prosecution of Introcaso.

[2] On August 24, 2007, Introcaso filed the complaint in the Court of Common Pleas of Lehigh County alleging that he had been improperly subjected to the search of his property, criminal investigation, and federal prosecution, all under color of the joint state and federal law enforcement initiative known as Project Safe Neighborhoods. The defendants removed the case to this court pursuant to 28 U.S.C. § 1442(a)(1). I subsequently denied Introcaso's motion for remand. See Document #35. On July 2, 2008, the Third Circuit Court of Appeals dismissed Introcaso's appeal of that Order for lack of jurisdiction. See Document #56.

and the United States Supreme Court during criminal and collateral proceedings in which he challenged his conviction and sentence.[3]  Among the defendants whom Introcaso sues is Patrick L. Meehan, the United States Attorney for the Eastern District of Pennsylvania, Seth Weber, the Assistant United States Attorney who prosecuted the case, and Kevin B. Curry, the Special Agent of the Bureau of Alcohol, Tobacco and Firearms assigned to the case.  These defendants have filed motions to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[4]  For the following reasons, I will grant the motions in their entirety.

## I. BACKGROUND

In May 2004, Introcaso was indicted by a federal grand jury with knowing possession of an unregistered firearm, i.e., a sawed-off or short-barrel shotgun; and knowing possession of unregistered destruction devices, i.e., three hand grenades, all in violation of the National Firearms Act, 26 U.S.C. §§ 5801-72.  A year later, he was

---

[3] Among Introcaso's collateral attacks have been: (1) an unsuccessful petition for writ of *habeas corpus* to the Court of Appeals; (2) a second later-denied *habeas* petition to the Court of Appeals; (3) an August 28, 2006 motion under 28 U.S.C. § 2255 to vacate or set aside his sentence, which the trial court held in abeyance pending Introcaso's direct appeal; (4) an appeal of the trial court's decision to hold that motion in abeyance; and (5) two unsuccessful petitions to the Supreme Court for relief from his conviction and sentence. (Compl. ¶¶ 18, 36(j).)

[4] On January 18, 2008, I granted the defendants' motion for leave to file amended motions to dismiss, and ordered the plaintiff to file responses to the amended motions within fourteen days. See Document #38.  On January 31, 2008, one day shy of the deadline to respond, Introcaso filed a "motion for stay pending appeal." See Document #45.  On February 20, 2008, I denied that motion and again ordered the plaintiff to respond to the amended motions to dismiss within eight days. See Document #47.  Having sought no extension, Introcaso filed his responses on March 17, 2008. See Documents #49, 50, and 51.  Because the responses are untimely, I will strike them from the record.

convicted of both counts. On October 25, 2007, the Third Circuit Court of Appeals reversed the conviction on the first count, but affirmed the conviction and sentence on the second count. In doing so, the court provided the following facts:

> On February 2, 2004, the Lehigh County Sheriff's Office in Pennsylvania responded to a Protection from Abuse ("PFA") Order,[5] which required Introcaso to "immediately relinquish" all weapons to law enforcement, barred him from the marital residence shared with his wife, Samia Introcaso, and prohibited him from having any communication with her. Pursuant to the PFA Order, and at the direction of Introcaso's wife, police officers searched the house and found 28 firearms (including handguns and rifles), a machete, 21 knives, seven swords, and hundreds of pounds of ammunition. The police seized the weapons, but physically were unable to take the ammunition, which they left to retrieve later. One week later, Mrs. Introcaso again called the sheriff's office to inform them that she had found still more firearms belonging to her husband that she wanted removed from the house. One of the firearms was a 19th-Century shotgun that was displayed on a wall and not registered; it forms the basis for Count 1 of the indictment against Introcaso: knowing possession of a short-barreled rifle ("sawed-off shotgun") in violation of 26 U.S.C. § 5861(d). See also id. § 5845(a) (defining "firearm"), id. § 5871 (specifying penalty).
>
> Again, pursuant to the initial PFA Order as well as Mrs. Introcaso's signed written consent to the search, the police retrieved six more firearms (a Thompson submachine gun, an M-14 rifle with a scope, a nine-millimeter pistol, two handguns, and another rifle), plus several military-style ammunition boxes, containing three live hand grenades and

---

[5] The Pennsylvania Protection from Abuse Act, 23 Pa. Cons. Stat. Ann. §§ 6101-22, allows a plaintiff to obtain a PFA Order upon, *inter alia*, proof of abuse by a preponderance of the evidence at a hearing. See 23 Pa. Cons. Stat. Ann. §§ 6107, 6108. A PFA Order usually prohibits communication between the plaintiff and the defendant, 23 Pa. Cons. Stat. Ann. § 6108(a)(6), and may entail other requirements.

> related components for explosive devices (black gun powder and fuse wire). The latter items were found inside a locked cabinet, for which the keys that Mrs. Introcaso had given the police did not work, forcing them to break open the lock (again with her consent). These items form the basis for Count 2 of the indictment: possession of unregistered destructive devices, also in violation of 26 U.S.C. § 5861(d). See also id. § 5845(f) (defining "destructive device"), id. § 5871 (specifying penalty).
>
> In May 2004, a federal grand jury returned an indictment charging Introcaso with illegal possession of an unregistered firearm and possession of unregistered destructive devices. At the conclusion of trial in January 2005, the Judge declared a mistrial because the jury was deadlocked. At the end of a second trial in May 2005, a jury returned a guilty verdict on both counts of the indictment. Soon after, Introcaso filed post-trial motions for acquittal, arrest of judgment, and for a new trial. At a sentencing hearing in August 2005, the District Court denied all of Introcaso's post-trial motions and sentenced him to six months' imprisonment and six months' supervised release on count one; 46 months' imprisonment and three years' supervised release on count two; a fine of $ 2,000; and a special assessment of $ 200. The imprisonment terms were to run concurrently.

United States v. Introcaso, 506 F.3d 260, 263-264 (3d Cir. 2007) (footnote in original).

The court reviewed the conviction and sentence, concluded that the statute was ambiguous as to whether the antique firearm exception applied to the gun in question, and applied the rule of lenity to reverse Introcaso's conviction on Count I. Id. at 272. Because the government's evidence was sufficient to establish that Introcaso was in possession of the hand grenades, the court affirmed the conviction on Count II of the indictment. Id.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-312 (3d Cir. 1999).  Under Rule 12(b)(6), a pleading should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue, therefore, is not whether the non-moving party will ultimately prevail, but whether it is entitled to offer evidence to support its claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a pleading should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the pleading and accept all of the allegations as true, drawing all reasonable inferences in favor of the non-moving party. ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the pleading, exhibits attached to the pleading, matters of public record, and documents that form the

basis of a claim).

## III. DISCUSSION

Defendant Meehan is the chief prosecutor in the Office of the United States Attorney for the Eastern District of Pennsylvania. Defendant Weber is the Assistant United States Attorney who prosecuted Introcaso. It is well-established that a prosecutor is absolutely immune from suits for damages "when he acts within the scope of his prosecutorial duties." Imbler v. Pachtman, 424 U.S. 409, 420 (1976). As the Supreme Court observed in Imbler:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include the concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

Imbler, 424 U.S. at 422-23. The doctrine of absolute immunity allows prosecutors to exercise their own independent judgment in "deciding which suits to bring and in conducting them in court," so that prosecutors' decisions are not based on a fear of potential liability in a suit for damages. Id. at 424. The prosecutor's absolute immunity extends to all advocacy functions that are "intimately associated with the judicial phase of the criminal process." Id. at 430. This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior

6

"intimately associated with the judicial phases" of litigation. Id. In Imbler, the Supreme Court held that prosecutors are absolutely immune for their conduct in "initiating a prosecution and presenting the State's case." Id. at 431. The Court recognized that the prosecutor's duties as an advocate include actions preliminary to the initiation of a prosecution and outside the courtroom. Id. at 431 n.33. Harm to a falsely-charged defendant is remedied by safeguards built into the judicial system, such as probable cause hearings and dismissal of the charges, and into the state codes of professional responsibility. Burns v. Reed, 500 U.S. 478, 486-487 (1991).

The Court more recently explained that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). A prosecutor's defense of absolute immunity is not defeated even where a plaintiff makes allegations of malice, bad faith, vindictiveness, or self-interest. See Mireles v. Waco, 502 U.S. 9, 11 (1991); see also Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (prosecutor is absolutely immune when making decision to initiate prosecution even where he acted without a good faith belief that any wrongdoing had occurred or where he acted for purely personal motives). By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. Imbler, 424 U.S. at 430-31; Burns v. Reed, 500 U.S. at 483, n.2. In addition, there may be instances where a prosecutor's

behavior falls completely outside the prosecutorial role. See Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989). In that case, no absolute immunity is available.

Here, Introcaso alleges that Defendant Meehan has administered, promoted, prosecuted, and executed the unconstitutional Project Safe Neighborhoods Initiative, which Introcaso describes as a program "to effectuate gun control and ostensibly remove criminals with guns from the streets of the entire United States of America." Compl. ¶¶ 2, 11. He also contends that Defendant Meehan issued a joint press release with the Lehigh County District Attorney that set forth the government's indictment of Introcaso. Id. ¶ 29. According to the complaint, Defendant Meehan, presumably under the office of the United States Attorney General, allegedly permitted the initiative to be used for the prosecution. Id. ¶¶ 37(b), 37(c), 39(e)(3), 41, 42, and 45.[6] Introcaso contends that this prosecution of an innocent man resulted in false information being released to the press which defamed his personal character and reputation. Id. ¶ 45(a). Introcaso does not allege that Defendant Meehan personally acted as an investigative agent by participating in the searches and/or the arrest of Introcaso. Any conduct permitting the initiation and continuation of Introcaso's prosecution is the sort of prosecutorial conduct that the doctrine of absolute immunity protects. Thus, the doctrine of absolute immunity bars Introcaso's claims against Defendant Meehan.

---

[6] The sixty-six page complaint contains two misnumbered paragraphs. On page 44 of the complaint, there is a paragraph numbered "42," although there is already a paragraph "42." I have re-numbered the former paragraph number "44." Likewise, on page 51 of the complaint, there is a paragraph numbered "43," which I have re-numbered paragraph #45.

The same immunity applies to Defendant Weber. Introcaso alleges that Defendant Weber violated the Constitution when he waited two days to have Introcaso arraigned; moved to prevent him from being released on bail; and convinced a magistrate judge to refuse to set bail. Id. ¶¶ 26, 31, 45(d). He further alleges that Defendant Weber used humiliation, degradation, innuendo, threats, and age discrimination directed at Introcaso's attorney to influence the trial judge to appoint an attorney from the CJA panel, thereby denying Introcaso the legal assistance of his own choice. Id. ¶¶ 31, 32, 39(d)(1). Then, Defendant Weber and the CJA attorney allegedly conspired to add to Introcaso's discomfort by creating numerous punishing trial delays. Id. ¶¶ 31, 39(d)(3). During the trial, these two attorney-defendants allegedly conspired to manufacture a false report that Introcaso threatened "to get" Defendant Weber, which resulted in Introcaso's suffering continual solitary confinement. Id. ¶¶ 31, 36(j). Finally, Introcaso alleges that Defendant Weber covered up and withheld information of his own role in the pre- and post-arrest collusion and the instrumentation of Introcaso's false arrest and false imprisonment, and covered up a videotaped interview of Introcaso's wife. Id. ¶¶ 22, 31.

None of these claims involve administrative or investigative activity. On the contrary, they arise out of Defendant Weber's role as prosecutor. Absolute immunity shields Defendant Weber's conduct in obtaining court Orders, arguing motions, agreeing to continuances, obtaining an indictment, calling witnesses at hearings, and handling evidence. See Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980) (prosecutor's

9

handling of the evidence is within the sweep of initiating and presenting the State's case); see also Donahue v. Gavin, 2000 U.S. Dist. LEXIS 8242, at *9 (E.D. Pa. 2000) (prosecutor's failure to disclose material exculpatory evidence, whether intentional or inadvertent, is entitled to absolute immunity).  Thus, the doctrine of absolute immunity also bars Introcaso's claims against Defendant Weber.

The complaint also alleges that: (1) Defendant Curry violated Introcaso's Fourth Amendment rights by seizing Introcaso's shotgun from the custody of the Sheriff of Lehigh County, without a warrant; (2) that he did so without obtaining modification of the PFA Order and without legal authority; (3) that he later test-fired and allegedly destroyed the antique shotgun; (4) that Defendant Curry arrested Introcaso without a warrant or other legal authority; (5) that he intentionally injured Introcaso's arm when placing him in handcuffs; (6) that Defendant Curry threw Introcaso in the county jail "without charges" and without any exigent overt criminal act or cause; and (7) that after conspiring with Defendant Weber, Defendant Curry testified falsely at Introcaso's arraignment in support of the government's motion for pretrial detention.  Id. ¶¶ 21, 24, 26, 28, 39(b)(1) and (3), 45(b), (c), and (d).

Introcaso's seventh claim against Defendant Curry must fail because trial witnesses, even if they testify falsely, are protected by absolute quasi-judicial immunity from suits for damages arising out of their testimony.  Briscoe v. LaHue, 460 U.S. 325, 329 (1983); Kulwicki v. Dawson, 969 F.2d at 1467.  The immunity is available to public

official witnesses such as Defendant Curry.  Briscoe v. LaHue, 460 U.S. at 342.  The Third Circuit Court of Appeals extended this immunity to testimony given by witnesses in pretrial proceedings.  Williams v. Hepting, 844 F.2d 138, 140-141 (3d Cir. 1988).  Morever, the court has refused to recognize an exception to such absolute immunity for "complaining witnesses" who testify after initiating an underlying arrest or prosecution.  Kulwicki v. Dawson, 969 F.2d at 1467 n.16; see also Knight v. Poritz, 157 Fed. Appx. 481, 487 (3d Cir. 2005).  Thus, Introcaso's claim against Defendant Curry for testifying is barred by the absolute quasi-judicial immunity given to witnesses who testify at trial or in pretrial proceedings.

Under the law of the case doctrine, I must refrain from revisiting Introcaso's first, second, fourth, and sixth claims against Defendant Curry.  See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997).  The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation, and applies as much to the decisions of a coordinate court in the same case as to a court's own decisions.  Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816 (1988).  Because it prevents courts from entertaining endless appeals on the same issue, the doctrine promotes finality and judicial economy. Id.  The Supreme Court has elaborated on the scope and nature of this discretion:

> A court has the power to revisit prior decisions of its own or
> of a coordinate court in any circumstance, although as a rule
> courts should be loathe to do so in the absence of
> extraordinary circumstances such as where the initial decision

was 'clearly erroneous and would work a manifest injustice.' Id. at 817.  The Third Circuit Court of Appeals has recognized the following "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation:  (1) when new evidence is available; (2) when a supervening new law has been announced; or (3) when the earlier decision was clearly erroneous and would create manifest injustice.  Public Interest Research Group v. Magnesium Elektron, 123 F.3d at 116-117 (citing Bridge v. U.S. Parole Commission, 981 F.2d 97, 103 (3d Cir. 1992)).  None of these situations is present here.

Introcaso has brought his first and second claims against Defendant Curry to the court in pretrial motions during his related criminal case.  After full briefing and an extended hearing on the motions, Judge Gardner denied the claims as meritless.  United States v. Introcaso, No. 04-274, slip op. at 16-17, 21 (E.D. Pa. Dec. 6, 2004).  Introcaso's fourth and sixth claims against Defendant Curry are patently ridiculous considering the lengthy criminal proceedings and appeal process in this case.  Judge Gardner found that the government had filed a Complaint under seal against Introcaso on April 13, 2004.  Id. at 5.  On that same day, Introcaso was arrested pursuant to an arrest warrant issued by the Honorable Arnold C. Rapoport, and brought before Judge Rapoport for his initial appearance.  Id.  On April 15, 2004, Judge Rapoport conducted a hearing and determined that Introcaso was a danger to the community and ordered him detained pending trial.  Id. Introcaso then brought a motion for release on bail before Judge Gardner who conducted

a three-day hearing on the motion. Id. Judge Gardner also determined that Introcaso was a danger to the community and denied the motion for release. Several pretrial motions followed which, though untimely, Judge Gardner considered and denied after a full hearing. Id. at 6. The claims of a warrantless arrest and being unjustly placed into detention pending trial have been considered repeatedly by this court, and found to be meritless. Accordingly, under the law of the case doctrine, I will refrain from re-deciding Introcaso's first, second, fourth, and sixth claims, and dismiss these claims against Defendant Curry.

Furthermore, all of the claims against Defendant Curry, including the remaining ones, are cognizable under Bivens. The Third Circuit Court of Appeals has determined that Bivens claims are subject to Pennsylvania's two-year statute of limitations for personal injury actions. See Kost v. Kozakiewicz, 1 F.3d 176, 189-190 (3d Cir. 1993) (citing 42 PA. CONS. STAT. ANN. § 5524); see also Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988). For these claims to be timely, Introcaso must have filed them within two years of the date of accrual. A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). The factual basis for Introcaso's claims against Defendant Curry arises out of duties performed by Defendant Curry in his capacity as Special Agent of the Bureau of Alcohol, Tobacco and Firearms assigned to the case. Defendant Curry's

involvement in the case appears to have begun in 2004 and terminated at the end of the second trial in May 2005. Introcaso filed his complaint in Lehigh County Court of Common Pleas on August 24, 2007, beyond the expiration of the limitation period. Accordingly, Introcaso's <u>Bivens</u> action claims against Defendant Curry must be dismissed as untimely.

Finally, I must further grant the motions to dismiss of all three federal defendants because Introcaso has failed to show that his conviction or sentence had ever been invalidated. <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In <u>Heck</u>, the Supreme Court held that a prisoner's civil rights suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated. <u>Id.</u> at 486-487. This favorable termination rule applies no matter the target of the prisoner's suit, if success in that action would necessarily demonstrate the invalidity of confinement or its duration. <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (1997). The Third Circuit Court of Appeals has held that <u>Heck</u> applies to <u>Bivens</u> actions. <u>Dare v. United States, et al.</u>, 2008 U.S. App. LEXIS 3251, *4 (3d Cir. February 14, 2008). Here, success in Introcaso's <u>Bivens</u> claims against Defendant Meehan, Defendant Weber, and Defendant Curry would necessarily imply the invalidity of Introcaso's conviction and sentence. Notwithstanding the Third Circuit's reversal of the conviction on Count I, Introcaso cannot demonstrate that his conviction on Count II or his sentence has been invalidated. Accordingly, the claims in this complaint against the federal defendants which I have construed as having been

14

brought under <u>Bivens</u> must be dismissed.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER M. INTROCASO,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-3726 |
| | : | |
| **PATRICK L. MEEHAN, et al.,** | : | |
| Defendants | : | |

### O R D E R

**AND NOW,** this   9th   day of July, 2008, upon consideration of the motions to dismiss of Defendant Meehan, Defendant Weber, and Defendant Curry, IT IS HEREBY ORDERED that:

1. The motions to dismiss (Documents #39, 40 and 41) are GRANTED in their entirety;

2. The plaintiff's untimely responses (Document #49, 50, and 51) are STRICKEN;

3. All claims against Defendant Meehan, Defendant Weber, and Defendant Curry are DISMISSED with prejudice.

BY THE COURT:

 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.