**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXANDER M. INTROCASO,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-3726** |
| | : | |
| **JAMES MARTIN, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

STENGEL, J.                                                    July  21, 2008

Alexander M. Introcaso, who is represented by counsel, brings this civil action against various federal, state, and local law enforcement officials, alleging constitutional and common law tort claims targeting his prosecution and conviction for violating the National Firearms Act.[1]  He rehashes many claims already rejected by the courts during criminal and collateral proceedings in which he challenged his conviction and sentence.[2] Among the defendants whom Introcaso sues is James Martin, the District Attorney of

---

[1]  On August 24, 2007, Introcaso filed the complaint in the Court of Common Pleas of Lehigh County alleging that he had been improperly subjected to the search of his property, criminal investigation, and federal prosecution, all under color of the joint state and federal law enforcement initiative known as Project Safe Neighborhoods.  The defendants removed the case to this court pursuant to 28 U.S.C. § 1442(a)(1).  I subsequently denied Introcaso's motion for remand.  See Document #35.  On July 2, 2008, the Third Circuit Court of Appeals dismissed Introcaso's appeal of that Order for lack of jurisdiction.  See Document #56.

[2]  Among Introcaso's collateral attacks have been: (1) an unsuccessful petition for writ of *habeas corpus* to the Court of Appeals; (2) a second later-denied *habeas* petition to the Court of Appeals; (3) an August 28, 2006 motion under 28 U.S.C. § 2255 to vacate or set aside his sentence, which the trial court held in abeyance pending Introcaso's direct appeal; (4) an appeal of the trial court's decision to hold that motion in abeyance; and (5) two unsuccessful petitions to the Supreme Court for relief from his conviction and sentence.  (Compl. ¶¶ 18, 36(j).)

Lehigh County, and two Lehigh County Detectives, Kenneth C. Hilbert and Dennis

Steckel.  These three defendants have filed a joint motion to dismiss the complaint

pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[3]  For the following

reasons, I will grant the motion in its entirety.

## I. BACKGROUND

In May 2004, Introcaso was indicted by a federal grand jury with knowing

possession of an unregistered firearm, i.e., a sawed-off or short-barrel shotgun; and

knowing possession of unregistered destruction devices, i.e., three hand grenades, all in

violation of the National Firearms Act, 26 U.S.C. §§ 5801-72.  A year later, he was

convicted of both counts.  On October 25, 2007, the Third Circuit Court of Appeals

reversed the conviction on the first count, but affirmed the conviction and sentence on the

second count.  In doing so, the court provided the following facts:

> On February 2, 2004, the Lehigh County Sheriff's Office in
> Pennsylvania responded to a Protection from Abuse ("PFA")
> Order,[4] which required Introcaso to "immediately relinquish"
> all weapons to law enforcement, barred him from the marital

---

[3]  These defendants filed this motion to dismiss on October 12, 2007.  (Document #16).
Although Introcaso's response was due on October 26, 2007, none was filed.  On January 18,
2008, I ordered Introcaso to file responses to all outstanding motions to dismiss on or before
February 1, 2008.  (Document #37).  On March 17, 2008, having sought no extension, Introcaso
filed a response to the motion to dismiss.  (Document #53).  Because it is untimely, I will strike
this response from the record.

[4]  The Pennsylvania Protection from Abuse Act, 23 Pa. Cons. Stat. Ann. §§ 6101-22,
allows a plaintiff to obtain a PFA Order upon, *inter alia*, proof of abuse by a preponderance of
the evidence at a hearing.  See 23 Pa. Cons. Stat. Ann. §§ 6107, 6108.  A PFA Order usually
prohibits communication between the plaintiff and the defendant, 23 Pa. Cons. Stat. Ann. §
6108(a)(6), and may entail other requirements.

residence shared with his wife, Samia Introcaso, and prohibited him from having any communication with her. Pursuant to the PFA Order, and at the direction of Introcaso's wife, police officers searched the house and found 28 firearms (including handguns and rifles), a machete, 21 knives, seven swords, and hundreds of pounds of ammunition.  The police seized the weapons, but physically were unable to take the ammunition, which they left to retrieve later.  One week later, Mrs. Introcaso again called the sheriff's office to inform them that she had found still more firearms belonging to her husband that she wanted removed from the house.  One of the firearms was a 19th-Century shotgun that was displayed on a wall and not registered; it forms the basis for Count 1 of the indictment against Introcaso:  knowing possession of a short-barreled rifle ("sawed-off shotgun") in violation of 26 U.S.C. § 5861(d).  See also id. § 5845(a) (defining "firearm"), id. § 5871 (specifying penalty).

Again, pursuant to the initial PFA Order as well as Mrs. Introcaso's signed written consent to the search, the police retrieved six more firearms (a Thompson submachine gun, an M-14 rifle with a scope, a nine-millimeter pistol, two handguns, and another rifle), plus several military-style ammunition boxes, containing three live hand grenades and related components for explosive devices (black gun powder and fuse wire).  The latter items were found inside a locked cabinet, for which the keys that Mrs. Introcaso had given the police did not work, forcing them to break open the lock (again with her consent).  These items form the basis for Count 2 of the indictment:  possession of unregistered destructive devices, also in violation of 26 U.S.C. § 5861(d). See also id. § 5845(f) (defining "destructive device"), id. § 5871 (specifying penalty).

In May 2004, a federal grand jury returned an indictment charging Introcaso with illegal possession of an unregistered firearm and possession of unregistered destructive devices. At the conclusion of trial in January 2005, the Judge declared a mistrial because the jury was deadlocked.  At the end of a second trial in May 2005, a jury returned a guilty verdict on

3

> both counts of the indictment. Soon after, Introcaso filed
> post-trial motions for acquittal, arrest of judgment, and for a
> new trial.  At a sentencing hearing in August 2005, the
> District Court denied all of Introcaso's post-trial motions and
> sentenced him to six months' imprisonment and six months'
> supervised release on count one; 46 months' imprisonment
> and three years' supervised release on count two; a fine of $
> 2,000; and a special assessment of $ 200.  The imprisonment
> terms were to run concurrently.

United States v. Introcaso, 506 F.3d 260, 263-264 (3d Cir. 2007) (footnote in original).

The court reviewed the conviction and sentence, concluded that the statute was

ambiguous as to whether the antique firearm exception applied to the gun in question, and

applied the rule of lenity to reverse Introcaso's conviction on Count I.  Id. at 272.

Because the government's evidence was sufficient to establish that Introcaso was in

possession of the hand grenades, the court affirmed the conviction on Count II of the

indictment.  Id.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

pleading for "failure to state a claim upon which relief can be granted."  The rule is

designed to screen out cases where "a complaint states a claim based upon a wrong for

which there is clearly no remedy, or a claim which the plaintiff is without right or power

to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian

Corp., 189 F.3d 305, 311-312 (3d Cir. 1999)  Under Rule 12(b)(6), a pleading should not

be dismissed for failure to state a claim unless it appears beyond doubt that the non-

4

moving party can prove no set of facts in support of its claim which would entitle it to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The issue, therefore, is not whether the non-moving party will ultimately prevail, but whether it is entitled to offer evidence to support its claims.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a pleading should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the pleading and accept all of the allegations as true, drawing all reasonable inferences in favor of the non-moving party.  <u>ALA v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994); <u>see also</u> <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the pleading, exhibits attached to the pleading, matters of public record, and documents that form the basis of a claim).

## III.  <u>DISCUSSION</u>

Defendant Martin is the chief prosecutor for the County of Lehigh.  It is well-established that a prosecutor is absolutely immune from suits for damages "when he acts within the scope of his prosecutorial duties."  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 420 (1976).  As the Supreme Court observed in <u>Imbler</u>:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties.  These include the concern that harassment by

> unfounded litigation would cause a deflection of the
> prosecutor's energies from his public duties, and the
> possibility that he would shade his decisions instead of
> exercising the independence of judgment required by his
> public trust.

Imbler, 424 U.S. at 422-23.  The doctrine of absolute immunity allows prosecutors to

exercise their own independent judgment in "deciding which suits to bring and in

conducting them in court," so that prosecutors' decisions are not based on a fear of

potential liability in a suit for damages.  Id. at 424.  The prosecutor's absolute immunity

extends to all advocacy functions that are "intimately associated with the judicial phase of

the criminal process."  Id. at 430.  This includes activity taken while in court, such as the

presentation of evidence or legal argument, as well as selected out-of-court behavior

"intimately associated with the judicial phases" of litigation.  Id.  In Imbler, the Supreme

Court held that prosecutors are absolutely immune for their conduct in "initiating a

prosecution and presenting the State's case."  Id. at 431.  The Court recognized that the

prosecutor's duties as an advocate include actions preliminary to the initiation of a

prosecution and outside the courtroom.  Id. at 431 n.33.  Harm to a falsely-charged

defendant is remedied by safeguards built into the judicial system, such as probable cause

hearings and dismissal of the charges, and into the state codes of professional

responsibility.  Burns v. Reed, 500 U.S. 478, 486-487 (1991).

The Court more recently explained that "acts undertaken by a prosecutor in

preparing for the initiation of judicial proceedings or for trial, and which occur in the

course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  A prosecutor's defense of absolute immunity is not defeated even where a plaintiff makes allegations of malice, bad faith, vindictiveness, or self-interest.  See Mireles v. Waco, 502 U.S. 9, 11 (1991); see also Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (prosecutor is absolutely immune when making decision to initiate prosecution even where he acted without a good faith belief that any wrongdoing had occurred or where he acted for purely personal motives).  By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity.  Imbler, 424 U.S. at 430-31; Burns v. Reed, 500 U.S. at 483, n.2.  In addition, there may be instances where a prosecutor's behavior falls completely outside the prosecutorial role.  See Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989).  In that case, no absolute immunity is available.

Here, Introcaso alleges that Defendant Martin first consulted with his two co-defendant detectives, then ordered them to search Introcaso's residence armed with a Consent Form for Introcaso's wife to execute.  Compl. ¶19.  He further alleges that Defendant Martin issued a joint press release with the United States Attorney for the Eastern District of Pennsylvania that set forth the government's indictment of Introcaso. Id. ¶ 29.  Introcaso contends that this prosecution of an innocent man resulted in false information being released to the press which defamed his personal character and

reputation.  Id. ¶ 45(a).[5]  Introcaso also accuses Defendant Martin of orchestrating legal action to declare Introcaso ineligible for his elected position as the Constable of Emmaus because of the criminal prosecution against Introcaso.  Finally, Introcaso alleges that Defendant Martin conspired with his co-defendants to effect violations of Introcaso's Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  Id. ¶¶ 36(h), 45.

None of the claims against Defendant Martin involve administrative or investigative activity.  Introcaso does not allege that Defendant Martin personally acted as an investigative agent by participating in the searches and/or the arrest of Introcaso.  Any conduct permitting the initiation and continuation of Introcaso's prosecution is the sort of prosecutorial conduct that the doctrine of absolute immunity protects.  See Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980) (prosecutor's handling of the evidence is within the sweep of initiating and presenting the State's case).  Thus, the doctrine of absolute immunity bars Introcaso's claims against Defendant Martin.  I will dismiss all claims against him.

Defendants Hilbert and Steckel are barely mentioned in the complaint.  Introcaso does allege, however, that both defendants conspired with their co-defendants to effect violations of Introcaso's Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  Compl. ¶¶ 36(h), 45.  Specifically, Introcaso contends that Defendants Hilbert and

---

[5]  The rambling sixty-six page complaint contains two misnumbered paragraphs.  On page 44 of the complaint, there is a paragraph numbered "42," although there is already a paragraph "42."  I have re-numbered the former paragraph number "44."  Likewise, on page 51 of the complaint, there is a paragraph numbered "43," which I have re-numbered paragraph #45.

Steckel went to search Introcaso's residence hoping to secure the consent of Introcaso's wife "who could neither read, write nor understand English." Id. ¶ 19.  Once there, Defendants Hilbert and Steckel "extracted improvised homemade firecracker type explosives in grenade bodies (backfire!)." Id. ¶ 33.

Under the law of the case doctrine, I will refrain from revisiting Introcaso's claims against Defendants Hilbert and Steckel having participated in an alleged illegal search of Introcaso's residence.  See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997).  The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation, and applies as much to the decisions of a coordinate court in the same case as to a court's own decisions.  Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816 (1988).  Because it prevents courts from entertaining endless appeals on the same issue, the doctrine promotes finality and judicial economy.  Id.  The Supreme Court has elaborated on the scope and nature of this discretion:

> A court has the power to revisit prior decisions of its own or
> of a coordinate court in any circumstance, although as a rule
> courts should be loathe to do so in the absence of
> extraordinary circumstances such as where the initial decision
> was 'clearly erroneous and would work a manifest injustice.'

Id. at 817.  The Third Circuit Court of Appeals has recognized the following "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation:  (1) when new evidence is available; (2) when a

9

supervening new law has been announced; or (3) when the earlier decision was clearly

erroneous and would create manifest injustice.  Public Interest Research Group v.

Magnesium Elektron, 123 F.3d at 116-117 (citing Bridge v. U.S. Parole Commission, 981

F.2d 97, 103 (3d Cir. 1992)).  None of these situations is present here.

Introcaso has already brought these claims of an illegal search to the court in

pretrial motions during his related criminal case.  After full briefing and an extended

hearing on the motions at which Defendants Hilbert and Steckel testified, Judge Gardner

denied the claims as meritless.  United States v. Introcaso, No. 04-274, slip op. at 8-15

(E.D. Pa. Dec. 6, 2004).  Judge Gardner found that Mrs. Introcaso understood English

sufficiently to give proper consent to the search, that she had actual authority to consent

to the search of the house, and that in the alternative, she had apparent authority to do so.

Id. at 9-10.  Accordingly, under the law of the case doctrine, I will refrain from re-

deciding Introcaso's claims of an illegal search against Defendants Hilbert and Steckel.

Furthermore, although not specifically cited, I assume that the allegations of

Defendants Hilbert and Steckel conspiring with their co-defendants to violate Introcaso's

constitutional rights are claims brought under Title 42 of the United States Code § 1983.

Section 1983 provides remedies for deprivations of rights established in the Constitution

or federal laws.  It does not, by its own terms, create substantive rights.  Baker v.

McCollan, 443 U.S. 137, 145 n.3 (1979).  Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the

> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a
federally protected right, and (2) commission of the deprivation by one acting under color
of state law.  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir.1997).  Where a plaintiff's §
1983 cause of action originates in Pennsylvania, however, the claims are subject to
Pennsylvania's two-year limitation period governing personal injury causes of action.
Rose v. County of York, 262 Fed. Appx. 485, 487 (3d Cir. 2008).  Here, the factual basis
for Introcaso's claims against Defendants Hilbert and Steckel arises out of the search of
Introcaso's residence in February 2004.  Introcaso filed his complaint in Lehigh County
Court of Common Pleas on August 24, 2007, beyond the expiration of the limitation
period.  Accordingly, Introcaso's Section 1983 claims would also fail as untimely.

Finally, in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court rejected §
1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> In order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by
> actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.  A claim for damages bearing that

11

          relationship to a conviction or sentence that has not been so
          invalidated is not cognizable under § 1983.

512 U.S. at 486-487 (footnote omitted).  The Court further instructed district courts, in

determining whether a complaint states a claim under § 1983, to evaluate whether a

favorable outcome would necessarily imply the invalidity of a criminal judgment.  Id. at

487.  Here, success in Introcaso's § 1983 claims against Defendants Hilbert and Steckel

would necessarily imply the invalidity of Introcaso's conviction and sentence.

Notwithstanding the Third Circuit's reversal of the conviction on Count I, Introcaso

cannot demonstrate that his conviction on Count II or his sentence has been invalidated.

Id. (if the district court determines that the plaintiff's action, even if successful, would not

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the

action should be allowed to proceed).  Accordingly, the claims in this complaint against

Defendants Hilbert and Steckel which I have construed as having been brought under §

1983 would also be dismissed.

        An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER M. INTROCASO,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-3726** |
| | : | |
| **JAMES MARTIN, et al.,** | : | |
| **Defendants** | : | |

## O R D E R

**AND NOW,** this   21st    day of July, 2008, upon consideration of the joint

motion to dismiss of Defendant Martin, Defendant Hilbert, and Defendant Steckel, IT IS

HEREBY ORDERED that:

1.      The motion to dismiss (Documents #16) is GRANTED in its entirety;

2.      The plaintiff's untimely response (Document #53) is STRICKEN;

3.      All claims against Defendant Martin, Defendant Hilbert, and Defendant
Steckel are DISMISSED with prejudice.


BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.